UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ELAN MICROELECTRONICS CORPORATION, | ) ) ) | Case No.: 2:10-cv-00014-GMN-PAL |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| PIXCIR MICROELECTRONICS CO. LTD., | ) ) ) | |
| Defendant. | ) ) | |

Pending before the Court is Defendant Pixcir Microelectronics Co. Ltd.'s ("Pixcir") renewed Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 41).

## I.  BACKGROUND

Plaintiff Elan Microelectronics Corporation ("Elan") filed suit against Defendant Pixcir, alleging infringement of U.S. Patent No. 5,825,352 ("the '352 patent"). (First Am. Compl., ECF No. 8.) Plaintiff alleges infringement pursuant to 35 U.S.C. § 271, based on Pixcir's TANGO S32 capacitance touch controller IC, an integrated circuit product that is "designed to be used with touchscreen and touchpad sensors to provide a touch-sensitive user input devices [sic] that recognize multi-finger gestures and communicate those gestures to a host application." (*Id*. at 7:¶10.)  In the Complaint, Plaintiff alleged that "[t]his Court has personal jurisdiction over Pixcir because Pixcir conducts business in this judicial district and has committed certain acts of infringement complained of herein in this district." (*Id*. at 2:¶2.)

Defendant moved to dismiss for lack of personal jurisdiction (ECF No. 16), and Plaintiff opposed the motion, arguing in the alternative that jurisdictional discovery should be granted (ECF Nos. 17, 22).  The Court denied Defendant's motion to dismiss and granted Plaintiff's

1  request for jurisdictional discovery on April 4, 2011, allowing a 120-day discovery period.
2  (ECF No. 31.)  Defendant renewed the motion to dismiss after the close of jurisdictional
3  discovery (ECF No. 41), and Plaintiff opposed the motion (ECF No. 44).
4      At the close of the discovery period, the parties' contemplated deposition of Pixcir's
5  Chief Operations Officer ("COO"), Vincent Fuentes, had not been conducted, and had still not
6  taken place as of January 26, 2012. (ECF No. 87)  Defendant did submit affidavits from Fuentes
7  and from Michael Northway, an employee of the Bergquist Company, with whom Pixcir has
8  transacted business. (ECF Nos. 65, 71-2.)  These affidavits directly contradicted earlier
9  affidavits by the same individuals. (*Id.*; *see* ECF Nos. 54, 16-2, 23-2.)  Plaintiff filed several
10 motions requesting sanctions and other discovery relief relating to the contradictory affidavits,
11 Defendant's failure to produce all requested documents and Defendant's failure to produce
12 Fuentes for deposition. (ECF Nos. 45, 49, 47, 76.)  The Court, finding no evidence of bad faith,
13 denied the motions for sanctions, without prejudice. (ECF No. 87)  At the motion hearing on
14 January 26, 2012, Plaintiff withdrew the Motion to Take Deposition (ECF No. 47) and requested
15 the Court's ruling on Defendant's renewed Motion to Dismiss (ECF No. 41). (*Id.*)

## II.  LEGAL STANDARD

Precedent from the United States Court of Appeals for the Federal Circuit controls personal jurisdiction questions in patent infringement cases. 28 U.S.C. § 1295(a)(1); *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1292 (Fed. Cir. 2009).  When a personal jurisdiction inquiry is "based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d

/ / /

/ / /

/ / /

1344, 1349 (Fed. Cir. 2003).[1]  Because an evidentiary hearing has not been held, the contemplated discovery has not been completed, and the parties do not dispute the applicable standard, the Court will apply the prima facie standard.  However, the Court finds that if the preponderance of the evidence standard were to apply, Plaintiff has also met that burden.

Rule 4(k) of the Federal Rules of Civil Procedure provides for service of summons or filing a waiver of service to establish personal jurisdiction over a defendant.  Rule 4(k)(1)(A) permits service of process to establish jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." "[A] federal court addressing personal jurisdiction over a defendant approaches such an inquiry by analyzing the long-arm statute and governing principles of the forum state." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009).  "Rule 4(k)(2), on the other hand, establishes jurisdiction over a defendant when process has been served and three requirements are met: '(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process.'" *Id.* (quoting *Synthes*, 563 F.3d at 1294).

"Nevada's long-arm statute, NRS 14.065, reaches the limits of due process set by the United States Constitution." *Baker v. Eighth Judicial Dist. Court*, 999 P.2d 1020, 1023 (Nev.

---

[1] The Federal Circuit has held that a plaintiff must show personal jurisdiction by a preponderance of the evidence where the parties conducted jurisdictional discovery and "advised the district court that no evidentiary hearing was necessary with respect to the issue of personal jurisdiction because the jurisdictional facts were undisputed." *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001).  However, courts have construed this holding narrowly. *See*, *e.g.*, *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 748 (D. Minn. 2008) (holding that the prima facie standard applied "[w]ithout further guidance from the parties" where the plaintiff had "undertaken some jurisdictional discovery . . ., including limited time for deposition" and where neither party "represent[ed] that jurisdictional discovery [was] complete . . ., or advise[d] that an evidentiary hearing [was] needed" and construing *Pieczenik* to stand for the proposition that "where jurisdictional discovery is complete and the parties advise that no evidentiary hearing is necessary, the plaintiff is put to proof and must show personal jurisdiction by a preponderance of the evidence"); *see also Dram Technologies LLC v. America II Group, Inc.*, No. 2:10-CV-45-TJW, 2011 WL 4591902, at *2 (E.D. Tex. Sept. 30, 2011) (construing *Pieczenik* to stand for the proposition that "[w]here the parties . . . have conducted jurisdictional discovery, the plaintiff bears the burden of proving by a preponderance of the evidence that personal jurisdiction exists" and discussing in a footnote that "[i]t is not entirely clear that Federal Circuit law requires the preponderance of the evidence burden").  The Court finds that the facts here are most similar to those in *Northbrook Digital*, in that Plaintiff has undertaken some jurisdictional discovery, including limited time for a deposition, and neither party represented that jurisdictional discovery was complete or advised that an evidentiary hearing was needed.

2000). Therefore, the jurisdiction inquiry is reduced to whether exercising personal jurisdiction over the defendant satisfies due process. *Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010). The Federal Circuit applies a three-factor test for specific jurisdiction due process analysis: (1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair. *Synthes*, 563 F.3d at 1297.

### III. DISCUSSION

The Court finds that Plaintiff has met its burden to show that Defendant is subject to personal jurisdiction in this forum.

Vincent Fuentes, Pixcir's Chief Operating Officer, traveled to Las Vegas in January 2009, and attended the Consumer Electronics Show ("CES"). (Third Fuentes Declaration, Nov. 29, 2011, ECF No. 71-2.) At CES 2009, he talked with Michael Northway, the Product Manager in the User Interfaces Device Group at the Bergquist Company in Chanhassen, Minnesota. (First Northway Declaration, Oct. 24, 2011, 2:¶1, ECF No. 54; Third Fuentes Declaration, Nov. 29, 2011, 3:¶11, ECF No. 71-2.) Fuentes also talked with Gary Barrett, the Chief Technology Officer ("CTO") at Touch International, Inc. ("TII"), a Texas company. (Third Fuentes Declaration, Nov. 29, 2011, 4:¶14, ECF No. 71-2.; Exhibit I, part 1 of DeBruine Declaration, Oct. 21, 2011, ECF No. 50-3.) During the conversation with Barrett, Fuentes discussed an advantage of the TANGO S32 controller in comparison to a competing Cypress controller. (Third Fuentes Declaration, Nov. 29, 2011, 4:¶14, ECF No. 71-2.; Exhibit I, part 1 of DeBruine Declaration, Oct. 21, 2011, ECF No. 50-3.)

Beyond this summary, the details of these conversations are both uncertain and contradicted. Fuentes has filed three declarations, which contradict each other. (First Fuentes Declaration, Oct. 4, 2010, ECF No. 16-2; Second Fuentes Declaration, Nov. 4, 2010, ECF No.

23-2; Third Fuentes Declaration, Nov. 29, 2011, ECF No. 71-2.)  Fuentes' Third Declaration, revising his statements in the First and Second Declarations, was not submitted until Defendant filed the Reply to the renewed Motion to Dismiss on November 29, 2011. (ECF No. 71.)  Northway, also, has filed two conflicting declarations, the second of which was filed on November 28, 2011. (ECF Nos. 54, 65.)  Barrett has not submitted any declarations.  None of these three have been deposed, though a deposition of Fuentes was contemplated as early as April 2011. (*See* Order, April 4, 2011, ECF No. 31.)  Plaintiff had filed an emergency motion to depose employees of Touch International, Inc., and the Bergquist Company, which would have included Gary Barrett and Michael Northway. (ECF No. 47.)  However, at the motion hearing before the Court on January 26, 2012, Plaintiff withdrew the motion and requested the Court's ruling on Defendant's renewed Motion to Dismiss (ECF No. 41), declaring a reluctance to delay litigation on the merits. (ECF No. 87)

In his First Declaration, Fuentes stated that "no Pixcir representative has ever visited the state of Nevada to use, offer for sale, sell, market, or import the TANGOS32 capacitance touch controller," and that "no Pixcir representative has ever visited the state of Nevada to induce others to use, offer for sale, sell, market, or import the TANGOS32 capacitance touch controller." (First Fuentes Declaration, Oct. 4, 2010, 2:¶¶8-9, ECF No. 16-2.)  Regarding CES 2009, Fuentes stated that Pixcir "did not have a booth." (*Id*. at ¶6.)  Regarding CES 2010, Fuentes stated that "Pixcir did not register," "there was no Pixcir booth," and "no representatives from Pixcir attended." (*Id*. at ¶7.)  Fuentes did not mention his attendance or activities at CES 2009.

In his Second Declaration, Fuentes stated that "no PixCir employee, agent, or representative exhibited, demonstrated, or promoted any PixCir touch screen controller, or any product containing any PixCir touch screen controller, or showed any video depicting any PixCir touch screen controller or its operation, at the 2009 CES." (Second Fuentes Declaration,

Nov. 4, 2010, 3:¶8, ECF No. 23-2.)  He also stated that "no PixCir employee, agent, or representative disseminated any information about PixCir's touch screen controllers, or discussed PixCir's touch screen controllers with any person at the 2009 CES." (*Id*.)  In this second Declaration, Fuentes was more forthcoming about his attendance at CES 2009, admitting that he "personally attended the event," but repeating his denial that he "demonstrate[d], promote[d], or even discuss[ed] any PixCir touch controller or any consumer product containing any PixCir touch controller." (*Id*. at ¶9.)  Fuentes also stated that he "did not register as an exhibitor, co-exhibitor, or visitor, or set up or man any booth containing PixCir touch controllers." (*Id*.)  He stated that "[d]uring my visit to the 2009 CES, I did not take with me any PixCir touch panel controllers or any consumer products containing any PixCir touch panel controllers." (*Id*.)

In his Third Declaration, Fuentes states that his attendance at CES 2009 was in the course of a "vacation in the United States" that he took "with a traveling companion" and for which he "paid for [his] own travel expenses." (Third Fuentes Declaration, Nov. 29, 2011, 3:¶8, ECF No. 71-2.)  Prior to CES 2009, he "had several communications with a company called UniDisplay Inc., a Chinese and Taiwanese manufacturer of touch panels with whom we had a friendly relationship." (*Id.* at 2-3:¶7.)  He explained that he "understood that UniDisplay was planning to be present at 2009 CES, and that the company would be displaying products using touch screen controllers by a company called Cypress, which is a competitor of Pixcir." (*Id*. at 3:¶7.)  He stated that "[o]riginally, [he] intended to take time out of my vacation to display a Pixcir prototype based on an 8.9 inch ASUS laptop computer at UniDisplay's booth [at CES 2009]." (*Id.*)  He explained that "Pixcir planned to send the laptop to a UniDisplay employee named M.N. Hsiao, and [Fuentes] would pick up the laptop from him in Las Vegas." (*Id*.)

Referring to an email producing during discovery (Ex. G to DeBruine Declaration, Oct. 21, 2011, ECF No. 51), in which Fuentes wrote that "Kelvin and me plan to come and support

1 the CES exhibition with the 7" demo kit," Fuentes clarified that the demo kit was the ASUS
2 laptop prototype and Kelvin is Kelvin Ho, an employee of Power Electronics Ltd. (*Id*. at 3:¶9.)
3       Fuentes continues, explaining that "when [he] arrived in Las Vegas and retrieved the
4 ASUS laptop prototype, [he] found that its touch screen was inoperable." (*Id*. at ¶10.) Because
5 of that, Fuentes states that he "only stayed at the 2009 CES for about two hours, during which I
6 primarily looked to see what touch screens were on display by other companies." (*Id*.) He
7 states that he "did not offer any Pixcir products containing the TANGO S32 chip for sale, or
8 induce others to make any such sales or to use the chip." (*Id*.)
9       Fuentes then addresses his interactions with Michael Northway at CES 2009. Fuentes
10 states that in December 2008, he had told Northway that he would be at CES 2009 and that he
11 "could be found at UniDisplay's booth" and that at CES 2009 he "saw Mr. Northway at the
12 booth and spoke with him on a social level." (*Id*. at ¶11.) Referring to Northway's Second
13 Declaration, Fuentes states that Northway's recollection as stated in Northway's First
14 Declaration most closely describes their interactions at a trade show in Germany, not at CES
15 2009. (*Id*. at ¶12.)
16       Fuentes then discusses the email evidence (Exhibit I, part 1 of DeBruine Declaration,
17 Oct. 21, 2011, ECF No. 50-3) of his interactions with Gary Barrett, of Touch International, Inc.
18 (*Id*. at ¶14.) Fuentes states that he "met and had a casual discussion" with Barrett, and
19 "evidently discussed an advantage of the TANGO S32 controller in comparison to a competing
20 Cypress controller." (*Id*.) He states that he "did not remember this conversation when [he]
21 wrote [his] second Declaration . . ., but [his] memory was refreshed after reading" the January
22 12, 2009 email from Barrett. (*Id*.) He then states, "I believe that I *did* briefly discuss Pixcir's
23 controllers at the 2009 CES with Gary Barrett, and to that extent I modify my prior statement."
24 (*Id*.) He then states that he "did not offer to sell Touch International any TANGO S32 chips at
25 the 2009 CES," and that he "did not induce the company to use any product containing a

TANGO S32 chip." (*Id.*)

Fuentes attempts at length to explain the inconsistencies between the evidence produced during discovery and his prior declarations and responses to interrogatories. (*See id.* at 5-6:¶¶17-20.) These attempts are primarily a parsing of words and an apparent reliance on his claimed misunderstanding of English and legal vocabulary. (*Id.*) He states, "I do not consider my casual conversation with Gary Barrett to be 'marketing' because I was not at the trade show in any official Pixcir capacity, and I did not demonstrate a product to Mr. Barrett or offer any products to him for sale." (*Id.* at 5:¶18.)

Email evidence shows that Pixcir and TII, through Gary Barrett, continued to correspond after CES 2009, and to enter into business transactions and sale of prototypes as a result of their meeting at CES 2009. (*See* Ex. I, part 1 to DeBruine Decl., ECF No. 50-3.) Elan has also alleged that email evidence supports the conclusion that Pixcir coordinated with business partners to display products incorporating Pixcir technology at CES 2010. (*See* DeBruine Decl., ECF No. 50.)

### A. Due Process Analysis

The Court finds the Federal Circuit's due process analysis in *Synthes* most relevant to the facts of this case. *See* 563 F.3d at 1296-1300. Outlining and then discussing the three-factor test for specific jurisdiction, the court found that the district court did have specific jurisdiction over the defendant, and reversed the judgment of the district court dismissing plaintiff's complaint for lack of personal jurisdiction. *Id.*

The plaintiff in *Synthes* was a global medical-device company that developed, produced, and marketed instruments and implants, including bone plates, for the surgical fixation, correction, and regeneration of the human skeleton. *Id.* at 1288. "Synthes," the plaintiff, was the assignee of a patent directed to "a bone plating system and method for fracture fixation of bone." *Id.* The defendant, "GMReis," was a Brazilian corporation with headquarters in Brazil

that designed, manufactured, and marketed orthopedic and neurological medical devices, including bone plates. *Id*.

For three days in 2007, two employees of GMReis represented GMReis at a booth at the American Association of Orthopaedic Surgeons Annual Meeting ("AAOS Meeting" or "AAOS trade show") in San Diego, California. *Id*. at 1288. At the booth, the employees' display included samples of five locking bone plates. *Id*. Synthes filed suit against GMReis alleging infringement pursuant to 35 U.S.C. § 271, and pleading that GMReis was subject to personal jurisdiction because it had "'imported into the United States and/or offered to sell locking plates that infringe Synthes' patent rights [and had] displayed said locking plates at the 2007 [AAOS] Annual Meeting in San Diego, California for the purpose of generating interest in infringing products to the commercial detriment of [Synthes].'" *Id*.

### 1. Purposeful direction

The *Synthes* court found that the following facts supported its conclusion that the defendant, GMReis, purposefully directed its activities at parties in the United States:

> On behalf of GMReis, Mr. Lecumberri [a GMReis employee] brought locking bone plates into the United States from Brazil. As representatives of GMReis, Mr. dos Reis [GMReis' CEO] and Mr. Lecumberri displayed those items at the GMReis booth at the 2007 AAOS Meeting in San Diego, California. In addition, in their declarations, Mr. dos Reis and Mr. Lecumberri admitted that they attended the AAOS Meeting because GMReis wanted to display its products to attendees of the trade show. In fact, in its motion to dismiss, GMReis noted that its participation in the 2007 AAOS Meeting was part of its international sales effort.

*Id*. at 1297-1298. The court concluded that, "[t]ogether, these deliberate contacts support a finding that GMReis purposefully availed itself of the United States." *Id*. at 1298.

After production of emails documenting the shipment of a Pixcir prototype (see Ex. G to

DeBruine Decl., ECF No. 50-1), Fuentes admitted that Pixcir shipped the prototype to Las Vegas with the purpose of displaying it at a booth at CES 2009. Likewise, after production of emails referencing Fuentes' promotion of Pixcir technology at CES 2009 (see Ex. I, part 1 to DeBruine Decl., ECF No. 50-3), Fuentes admitted that he discussed advantages of the TANGO S32 controller over competing controllers while at a CES 2009 booth. One email from a Pixcir employee in April 2009 refers to Fuentes as the Marketing VP. (*See* Ex. J to DeBruine Decl., ECF No. 50-6.) The Court finds that Fuentes was clearly acting in a representative capacity for Pixcir at CES 2009, and fully intended to display Pixcir products to attendees at CES 2009. As in *Synthes*, Pixcir's participation in CES 2009 was part of an international sales effort to drum up interest in Pixcir technology.

Whether or not Fuentes successfully displayed a Pixcir prototype at CES 2009, the email evidence and Fuentes' belated admissions regarding his activities in Las Vegas support a finding that Pixcir purposefully directed its activities at parties in the District of Nevada during CES 2009.

**2.    Claim arising out of or relating to defendant's activities with the forum**

As discussed above, Elan's claim of patent infringement arises out of Pixcir's activities in the District of Nevada during CES 2009. Elan's complaint alleges that "Elan is the owner of all right and title to United States Patent No. 5,825,352 ("the '352 patent")," that "Pixcir is now and has been directly and/or indirectly infringing the '352 patent," that Pixcir "has committed acts of patent infringement in this district," and that "[a]s a result of Pixcir's infringement, Pixcir is liable to Elan for damages pursuant to 35 U.S.C. § 284." (First Am. Compl., ECF No. 8.)

**3.    Assertion of personal jurisdiction is reasonable and fair**

The Court finds that assertion of personal jurisdiction over Pixcir in this case is reasonable and fair, and Pixcir does not appear to dispute this in its arguments. The Court

considers five factors to determine whether personal jurisdiction would comport with "fair play and substantial justice": (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Synthes*, 563 F.3d at 1299 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Although the burden on a foreign defendant such as Pixcir is often significant, that burden is less onerous where, as has been shown, Pixcir representatives travel to the United States frequently and conduct business in District of Nevada. The burden is also significantly outweighed by the United States' interest in enforcing and adjudicating disputes relating to federal patent laws, and Elan's interest in obtaining convenient and effective relief. The District of Nevada, also, has an interest in discouraging injuries that occur within its boundaries, including injuries resulting from patent infringement. The Court finds that remaining two factors also weigh in favor of jurisdiction. Here there is no evidence of a class of social policies among the various jurisdictions in which Pixcir appears to conduct business. Although the state of Nevada has an interest in not chilling attendance at CES, this concern alone does not justify denial of jurisdiction where foreign parties are alleged to have violated United States laws.

Because the Court finds that the exercise of jurisdiction comports with due process, service of process to establish jurisdiction over Pixcir under Rule 4(k)(1) is proper.

## IV. CONCLUSION

The Court finds that Plaintiff has met its prima facie burden to show that jurisdiction over Defendant is proper. The Court also finds that Plaintiff has satisfied its burden under the preponderance of the evidence standard.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's renewed Motion to Dismiss (ECF No. 41) is **DENIED**.

**DATED** this 16th day of February, 2012.

_____
Gloria M. Navarro
United States District Judge