# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ELAN MICROELECTRONICS CORPORATION,  )
                                     )
                      Plaintiff,     )    Case No. 2:10-cv-00014-GMN-PAL
                                     )
vs.                                  )    **ORDER**
                                     )
PIXCIR MICROELECTRONICS CO. LTD.,    )    (Emg Mot Compel Depo Testimony - Dkt. #196)
                                     )
                      Defendant.     )
_____)

Before the court is Elan Microelectronics Corporation's Emergency Motion to Compel Deposition Testimony Pursuant to Rule 30(b)(6) (Dkt. #196). The court has considered the Motion, the Declaration of Sean P. DeBruine in Support (Dkt. #197), Supporting Exhibits (Dkt. #198), Defendant's Response (Dkt. #205), Declaration of Christopher Ogden (Dkt. #206), and Elan's Reply (Dkt. #215).

## BACKGROUND

This is a patent infringement action brought by the Plaintiff Elan who is the sole owner of United States Patent No. 5,825,352 ("`352 Patent") entitled "Multiple Finger Contact Sensing Method for Emulating Mouse Buttons and Mouse Operations on a Touch Sensor Pad." Am. Complaint, ¶5 (Dkt. #8). Plaintiff is a Taiwanese corporation. *Id*., ¶4. It conducts research and development for "products that enable Smart Human-Machine Interface solutions." *Id*., ¶7. Plaintiff develops "capacitive touch pads and transparent touch screens" capable of recognizing "touch pad gestures involving multiple simultaneous finger touches for input devices." *Id*. Plaintiff's Capacitive Touch Pad Multi-Finger Solution is one embodiment of the `352 Patent. *Id*., ¶8.

Defendant Pixcir designs, markets, and sells integrated circuit products. *Id*., ¶9. Plaintiff alleges that Pixcir has infringed the `352 Patent by using, selling, offering for sale, and marketing touch pad and touch screen products that have the ability to recognize multi-finger gestures. *Id*., ¶11.

In the current motion, Elan seeks an order compelling Defendant Pixcir Microelectronics Co. Ltd., ("Pixcir") to produce a witness qualified and adequately prepared to testify on the subject matter of Topics 3, 4 and 6 of Elan's August 23, 2012, Notice of Deposition Pursuant to Rule 30(b)(6). Topic 3 asked for testimony concerning "the sales and marketing of Pixcir Products including, without limitation, all efforts to sell, market, or promote the inclusion or use of Pixcir Products in Downstream Products." *See* Pixcir Second Notice of Deposition Pursuant to Rule 30(b)(6) attached as Exhibit "1" to DeBruine Declaration (Dkt. #197). Topic 4 requested testimony concerning "Pixcir's communications and contacts with third parties relating to the actual or potential supply or inclusion of Pixcir Products and Downstream Products." *Id*. Topic 6 asked for a Rule 30(b)(6) designee to address "the revenues, sales, costs, profits, margins, expenses and other financial information for the Pixcir products" which are alleged to infringe Elan's patent.

Pixcir designated its Chief Operating Officer ("COO"), Mr. Fuentes, to testify with respect to topics 3 and 4 of the Rule 30(b)(6) notice. Elan claims that during his deposition, which was taken in London, Mr. Fuentes admitted that he knew nothing regarding Pixcir's sales activities in China and had made no efforts to prepare himself on that topic. Elan requested that Pixcir provide a witness to cover that subject matter. Elan claims that at the deposition of Mr. Chen, which was to be taken in Hong Kong several weeks later, Pixcir attempted to designate Mr. Chen on topics 3 and 4 as they pertain to Pixcir's China operations. However, when counsel for Elan started to question him, counsel for Pixcir objected that Mr. Chen lacked the knowledge necessary to answer the question despite designating him to testify on the topics.

Mr. Gao was designated as Pixcir's designee for topic 6 concerning revenue, costs and accounting. Elan claims that at his deposition he demonstrated a complete lack of knowledge on the topic. Mr. Gao has only been employed by Pixcir since 2011. He supervises the finance group, but is not familiar with Pixcir's day-to-day accounting. He claimed to have spent a few hours reviewing unspecified documents, but could not provide helpful testimony regarding the financial documents produced to Elan in this matter. According to counsel for Elan, Mr. Gao repeatedly answered questions to the effect that he would need to check on the matter and get back to counsel.

///

Elan seeks evidentiary and monetary sanctions for Pixcir's failure to produce an educated witness to address the noticed deposition topics. Specifically, Elan requests that the court assess $20,000 in costs and attorney's fees incurred in taking the deposition of Mr. Gao as a sanction for Pixcir's failure to meet its obligations under Rule 30(b)(6). Elan argues monetary sanctions are appropriate under Rule 30(b)(6) and mandatory under Rule 37(d) for failure to produce an educated Rule 30(b)(6) witness, unless the failure was substantially justified. Elan claims that it incurred in excess of $16,000 in attorney's fees to take Mr. Gao's deposition. In addition, counsel was required to stay two extra days in Hong Kong for the deposition which resulted in additional hotel charges of $2,400. Court reporter and transcription fees totaled $1,800.

Elan also asks that he court preclude Pixcir from offering any evidence of its costs related to the accused products as a sanction for failing to produce an adequately prepared Rule 30(b)(6) designee. Elan points out that in a prior hearing, the court observed that obtaining discovery from Pixcir has been "like pulling teeth." The deposition took place only two weeks before the discovery cutoff, and Elan accuses Pixcir of engaging in dilatory conduct. Under these circumstances, Elan argues that harsh sanctions are appropriate and Pixcir should be precluded at trial from offering any evidence as to costs that would be deducted from its revenue to reduce the profits it has made from its infringing sales. Alternatively, Pixcir should be ordered to present a thoroughly prepared witness to testify in the United States well before the expert witness reports are due.

Pixcir opposes the motion arguing that in early discovery in this case Elan learned that Pixcir sales in the United States consisted of a few dozen experimental demo units worth only a few thousand dollars. Despite the small amount in dispute, Pixcir has "essentially laid open its files" regarding all it products and sales worldwide regardless of any direct relevance to the claims involved in this case. However, it is clear that very little of this discovery has anything to do with the alleged infringement in the United States alleged in the complaint. Pixcir argues that Elan's last minute motions are part of an aggressive strategy wholly disproportionate to this case. Pixcir designated four Pixcir witnesses it believed had the most knowledge on the topics described in Elan's second notice of deposition. These witnesses included Lionel Portmann, the Chief Technical Officer; Vincent Fuentes, the COO; Hongbo Gao, the Assistant to the CEO in charge of Finance; and Rudy Chen, Pixcir's Vice President. Pixcir

subsequently designated Jiin-Wei Hung, its CEO, as a supplemental Rule 30(b)(6) witness and made him available for two days of testimony. Elan has been provided with ten days of Rule 30(b)(6) deposition testimony on its twelve topics, and all of the deponents were from Pixcir's senior management.

Vincent Fuentes, Pixcir's COO, was designated as the witness to address topics 3 and 4. After the deposition, Elan asked for a supplemental witness to testify as to topics 2, 4, and 12, as they relate to events in Pixcir's Chinese office. Pixcir agreed to designate Mr. Hung, Pixcir's CEO, to testify concerning topics 2 and 4, as they relate to activities in China, and designated Mr. Rudy Chen, its VP, as a supplemental witness to testify regarding topic 12 on Pixcir's Chinese operations.

Mr. Gao is the assistant to the CEO in charge of Pixcir's Finance and sometimes referred to as the VP of Finance. He was designated to testify solely on topic 6. He reviewed financial data, recent financial statements, emails, and other financial related documents provided to him by Pixcir for about three hours. To the extent that Mr. Gao was not specifically able to authenticate the particular documents presented to him during his deposition, Pixcir stipulated to their authenticity.

Pixcir's opposition points out that the motion does not present any evidence that Mr. Fuentes was inadequately prepared to address topic 3, or that both Messrs. Fuentes and Hung were inadequately prepared to address topic 4. Pixcir has now provided three witnesses, Messrs. Fuentes, Hung, and Chen, to testify concerning what information Pixcir knows about "Downstream Products" referred to in topics 3 and 4, and the motion does not point out how their testimony was deficient in any manner.

Pixcir disputes that Mr. Gao was not prepared to testify concerning topic 6. Mr. Gao testified that he read extensively in preparing for his deposition and looked into each of the product series and their associated costs and expenses, profits and losses of every product, current and past customer lists, and some individual invoices, statements and vouchers. Mr. Gao also testified he reviewed relevant emails and spent approximately three hours in preparing for this single deposition topic. Given his responsibilities and senior management position, Pixcir argues this was a reasonable amount of time to spend preparing. Pixcir accuses Elan of trumping up complaints about Mr. Gao's testimony. Pixcir contends that Mr. Gao could not reasonably be expected to memorize financial figures found in every conceivable financial document produced by Pixcir, or to verify on the spot the accuracy of any

4

particular number. Pixcir maintains that Elan used much of Mr. Gao's deposition to repeatedly present him with tables of figures and asked him to verify the accuracy of those figures and vouch for the underlying math which was an impossible task for any employee.

Elan replies that Pixcir's response concerning Mr. Gao's Rule 30(b)(6) deposition testimony effectively admits the motion should be granted. Mr. Gao was unable to explain the cost of Pixcir's Tango S Products. Mr. Gao was shown documents showing conflicting cost structures for Pixcir's Tango S Products and admitted he could not verify which, if either, of the numbers were accurate. Gao testified that certain unnamed employees of Pixcir who created those cost figures could explain them. These admissions demonstrate that Mr. Gao could not testify to information known or reasonably available to Pixcir as required by Rule 30(b)(6). Pixcir does not suggest that resolution of its costs for the Tango S Products is outside the scope of the notice or that the information sought is not reasonably available to Pixcir. Thus, Pixcir must provide a knowledgeable witness prepared to testify about the revenue, sales, costs, profits, margins, expenses, and other financial information for its products. Elan maintains that Mr. Gao lacked basic information called for in the notice, although he admitted that the information was available, and given the opportunity he could get it. Elan suggests that Mr. Gao could have prepared for his deposition by confirming the documents that accurately demonstrate the revenues, sales, profits, etc., and other financial information for Pixcir's products and bringing them to his deposition. Instead, he refused to identify a single document he used to prepare. Pixcir has offered to authenticate contradictory documents on these subjects. However, Mr. Gao repeatedly disavowed the documents when he disclaimed any knowledge concerning the accuracy of the figures, or the genuineness of the documents themselves. Authentication of documents with a corresponding disavowal of the truth or accuracy of the documents is insufficient to meet a party's Rule 30(b)(6) obligations.

The reply argues, without any support, that Pixcir failed in its obligations concerning topics 2, 4, and 12, by ignoring Elan's protest that the witnesses originally produced were inadequately prepared, and by attempting to designate a new witness for these topics immediately prior to a previously agreed and scheduled deposition. This tactic, it is argued, evaded Pixcir's discovery obligations, and both evidentiary and monetary sanctions are therefore appropriate. Elan asks for monetary sanctions to

reimburse it for Pixcir's failure to produce a fully-educated Rule 30(b)(6) witness. In addition, Elan asks that the court preclude Pixcir from producing any evidence of its costs that would reduce the profits it has made from infringing sales.

## DISCUSSION

**I.    Rule 30(b)(6)**

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides, in pertinent part:

> A party may in the party's notice and in the subpoena may name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. The person so designated shall testify as to the matters known or reasonably available to the organization.

Id.

The purpose of the rule is to streamline the discovery process. *Resolution Trust Corp. v. Southern Union Co., Inc.,* 985 F.2d 196, 197 (5th Cir.1993). It serves a unique function in allowing for a specialized form of deposition. *Sprint Comm'ns Co., L.P. v. Theglobe.com, Inc.,* 236 F.R.D. 524, 527 (D. Kan. 2006). The rule "gives the corporation being deposed more control by allowing it to designate and prepare a witness to testify on the corporation's behalf." *U.S. v. Taylor,* 166 F.R.D. 356, 360 (M.D.N.C.1996). It is a discovery device employed by the examining party "to avoid the 'bandying' by corporations where individual officers disclaim knowledge of facts clearly known to the corporation." *Id.* Or, as another district court articulated, "One of the purposes of Rule 30(b)(6) is to curb any temptation a corporation might have to shunt a discovering party from "pillar to post" by presenting deponents who each disclaim knowledge of facts clearly known to someone in the organization." *Federal Deposit Ins. Corp. v. Butcher,* 116 F.R.D. 196, 199 (E.D.T enn.1986).

Rule 30(b)(6) imposes burdens on both the discovering party and the designating party. The party seeking discovery through a Rule 30(b)(6) deposition is required to describe "with reasonable particularity the matters on which examination is requested." Fed.R.Civ.P. 30(b)(6). Once served with a deposition notice under Rule 30(b)(6), the responding party is required to produce one or more

///

1  witnesses knowledgeable about the subject matter of the noticed topics. *Marker v. Union Fidelity Life
2  Insurance Company,* 125 F.R.D. 121, 126 (M.D.N.C.1989).

3        The testimony of a Rule 30(b)(6) designee "represents the knowledge of the corporation, not of
4  the individual deponents." *Taylor,* 166 F.R.D. at 361; *Hyde v. Stanley Tools,* 107 F.Supp.2d 992 (E.D.
5  La., 2000); *Sprint,* 236 F.R.D. at 527. A Rule 30(b)(6) designee presents the corporation's position on
6  the noticed topics. *United States v. Massachusetts Indus. Finance Agency,* 162 F.R.D. 410, 412 (D.
7  Mass.1995). A corporation has a duty under Rule 30(b)(6) to provide a witness who is knowledgeable
8  in order to provide "binding answers on behalf of the corporation". *Starlight International, Inc. v.
9  Herlihy,* 186 F.R.D. 626, 638 (D. Kan.1999). A Rule 30(b)(6) designee is not required to have personal
10 knowledge on the designated subject matter. *Sprint,* 236 F.R.D. at 528; *PPM Finance v. Norandal,* 297
11 F.Supp.2d 1072, 1085-86 (N.D. Ill., 2004); *Calzaturficio v. Fabiano Shoe Co., Inc.,* 201 F.R.D. 33, 37
12 (D. Mass.2001).

13       The designating party has a duty to designate more than one deponent if necessary to respond to
14 relevant areas of inquiry on the noticed topics. *Id.; Barron v. Caterpillar, Inc.,* 168 F.R.D. 175, 176
15 (E.D.Pa.1996); *Starlight,* 186 F.R.D. at 638 (corporation must produce "such number of persons as will
16 satisfy the request"); *In re: Vitamins Antitrust Litigation,* 216 F.R.D. 168, 172 (D.D.C.2003); *Securities
17 & Exchange Comm'n v. Morelli,* 143 F.R.D. 42, 45 (S.D.N.Y.1992); *Reilly v. Natwest Markets Group,
18 Inc.,* 181 F.3d 253, 268 (2d Cir.1999).

19       Rule 30(b)(6) is not designed to be a memory contest. *Bank of New York v. Meridien BIAO
20 Bank Tanzania Ltd.,* 171 F.R.D. 135, 150 (S.D.N.Y.1997). However, a corporation has "a duty to make
21 a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and
22 to prepare them to fully and unevasively answer questions about the designated subject matter."
23 *Starlight,* 186 F.R.D. at 639; *Dravo Corp. v. Liberty Mut. Ins.* Co., 164 F.R.D. 70, 75 (D.Neb.1995) ("If
24 the rule is to promote effective discovery regarding corporations, the spokesperson must be informed.");
25 *In re: Vitamins Antitrust Litigation,* 216 F.R.D. at 172 (corporation is obligated to produce one or more
26 Rule 30(b)(6) witnesses who are thoroughly educated about the noticed deposition topics and facts
27 known to the corporation or its counsel).
28 / / /

The duty to prepare a Rule 30(b)(6) designee goes beyond matters personally known to the witness or to matters in which the designated witness was personally involved. *Buycks-Roberson v. Citibank Federal Savs. Bank,* 162 F.R.D. 338, 343 (N.D. Ill.1995); *Securities and Exchange Commission v. Morelli,* 143 F.R.D. 42, 45 (S.D.N.Y.1992). The duty to produce a prepared witness on designated topics extends to matters not only within the personal knowledge of the witness but on matters reasonably known by the responding party. *Alexander v. Federal Bureau of Investigation,* 186 F.R.D. 137, 141 (D.D.C.1998). "By its very nature, a Rule 30(b)(6) deposition notice requires the responding party to prepare a designated representative so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity." *Alliance v. District of Columbia,* 437 F. Supp. 2d 32, 37 (D.D.C.2006) (internal citation omitted).

The fact that an organization no longer has a person with knowledge on the designated topics does not relieve the organization of the duty to prepare a Rule 30(b)(6) designee. *Taylor,* 166 F.R.D. at 361. There, the court recognized that it is not uncommon to find that a corporation no longer employs individuals who have memory of distant events, or to find that individuals with knowledge are deceased. *Id.* "These problems do not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* A party producing a Rule 30(b)(6) witness "must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits." *Id.* at 362.

The Federal Rules of Civil Procedure do not permit a party served with a Rule 30(b)(6) deposition notice or subpoena request "to elect to supply the answers in a written response to an interrogatory" in response to a Rule 30(b)(6) deposition notice or subpoena request. *Marker v. Union Fidelity Life Insurance,* 125 F.R.D. 121, 126 (M.D.N.C.1989). "Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored." *Id.* Similarly, in responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position. *In re: Vitamins Antitrust Litigation,* 216 F.R.D. at 172, 174. There, the defendants produced a timeline of events relevant to the litigation based on interviews of former employees and a review of accompanying documents and took the position at a Rule 30(b)(6) deposition that because statements of former employees are imputed to the company by operation of

law, the timelines "spoke for themselves" and the corporation need not produce a Rule 30(b)(6) deponent to provide an explanation. The court rejected this argument, stating:

> Bioproducts' objection rests on a misinterpretation of Rule 30(b)(6) and a mistaken view that mere authentication of the documents submitted with a corresponding disavowal of the truth or accuracy of the documents is sufficient to satisfy the requirements of Rule 30(b)(6) .... [there is] nothing in the rules or caselaw that would justify [such an] understanding of a sufficient Rule 30(b)(6) deposition.

*Id.* at 172.

Several courts have recognized that preparing a Rule 30(b)(6) designee may be an onerous task and that it is not uncommon for a corporation to claim:

> ... that it no longer employs individuals who have memory of a distant event or that such individuals are deceased.... These problems do not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.

*Taylor,* 166 F.R.D. at 360-61 (internal citations omitted). Although adequately preparing a Rule 30(b)(6) deposition can be burdensome, "this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business." *Id.* at 362. *Sprint*, 236 F.R.D. at 528 (acknowledging compliance with Rule 30(b)(6) may be onerous but that the Rule's requirements "negate any possibility that an inquiring party will be directed back and forth from one corporate representative to another, vainly searching for a deponent who is able to provide a response which would be binding on that corporation.")

Finally, if an organization designates a witness it believes in good faith would be able to provide knowledgeable responsive testimony and it becomes apparent during the deposition that the designee produced is unable to respond to relevant areas of inquiry, the responding party has a duty to designate an additional knowledgeable deponent. *Marker,* 125 F.R.D. at 126; *Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70, 75 (D. Neb.1995); *Starlight,* 186 F.R.D. at 638; *Sony v. Soundview Technologies,* 217 F.R.D. 104, 112 (D. Conn.2002).

**II.    Application and Analysis**

The court has carefully reviewed the moving and responsive papers and supporting declarations and exhibits including more than 200 pages of Mr. Gao's two-day deposition testimony. The motion to compel will be denied to the extent it complains about the inadequacy of Rule 30(b)(6) testimony

1    offered on topics 3 and 4.  The motion simply does not support Elan's claims that the witnesses'
2    deposition testimony was inadequate in any specific respects.  Pixcir admitted that the initial two
3    witnesses it produced were unable to address the topics with respect to its Chinese operations, but
4    subsequently designated an additional knowledgeable deponent, Mr. Chen, when it was apparent during
5    the deposition that the designees it produced were unable to respond to relevant areas of inquiries with
6    respect to Pixcir's Chinese operations.

7    However, after careful of Mr. Gao's deposition testimony, the court will grant Elan's request for
8    evidentiary sanctions for Pixcir's failure to produce a fully-educated Rule 30(b)(6) designee able to
9    address topic 6 of the deposition notice.  The court will deny Elan's request for monetary sanctions
10   finding that Mr. Gao made some effort to educate himself and provided significant discovery on
11   substantive issues involved in topic 6.  Mr. Gao testified that he spent approximately three hours
12   reviewing documents he assembled and documents provided to him by other members of the finance
13   department.  He familiarized himself generally with the nature of the claims involved in this lawsuit, as
14   well as another lawsuit between the parties pending in China.  He described the types of documents he
15   reviewed, and efforts to educate himself about products and accounting information preceding his
16   employment.

17   Counsel for Elan spent the first sixty pages of the deposition over several hours asking
18   questions before asking the deponent a single question about the specific Rule 30(b)(6) topic on which
19   he was designated to testify.   The deposition took substantially more time to conduct than usual
20   because an interpreter was required to translate questions and answers before the court reporter could
21   record the questions and answers.  From the court's review of the transcript, it appears counsel for Elan
22   is fluent in Chinese as she frequently corrected the translator during the deposition.  Counsel for Elan
23   frequently told the interpreter that the question was not properly translated, or the answer was not
24   properly translated.  Counsel for Elan also frequently interrupted the witness telling Mr. Gao his answer
25   was non-responsive before the translator could provide a translation which the court recorder could
26   record.

27   The court's review of two days of the deposition testimony indicates that the witness was
28   responsive to the majority of counsel's questions despite counsel's protestations to the contrary.  The

manner in which the witness expressed himself was not as direct as one would expect of a native English speaker.  However, when Mr. Gao was asked simple direct questions, he responded simply, concisely, and directly for the most part.

Counsel for Elan asked Mr. Gao to identify every single document he reviewed in preparation for his deposition.  She spent more than an hour asking questions about what he reviewed and with whom he spoke before the deposition.  Mr. Gao generally identified the materials he reviewed and each the individuals with whom he spoke.  Mr. Gao provided significant meaningful discovery concerning Pixcir's accounting rules and their compliance with Chinese government national standards.  He described the components of cost allocations for Pixcir products, and testified about the cost information for Pixcir products its sales people would be interested in versus the more detailed information the finance department kept.  Mr. Gao is the senior member of Pixcir management and a knowledgeable witness.  He provided significant relevant discovery.  The court therefore rejects Elan's arguments that counsel for Elan wasted two days obtaining worthless discovery.

However, the court finds Mr. Gao was clearly not prepared to address and provide meaningful answers binding the corporation concerning the details of Pixcir's revenues, sales, costs, profits, and expenses for the Pixcir products which are alleged to infringe Elan's patent in this case.  Mr. Gao was shown documents produced by Pixcir in this case documenting these topics and repeatedly testified that he did know if the information was accurate.  He repeatedly testified throughout the deposition that he did not personally verify the accuracy of the information concerning Pixcir's revenues, costs, profits, etc., that he did not know who compiled the documents, when the documents were compiled, whether the documents were accurate, and whether the persons who did compile the information verified the accuracy of the figures.  Mr. Gao clearly testified that the specific information requested concerning Pixcir's  revenues, costs, profits, etc., was available on Pixcir's accounting system although printed reports were not normally prepared because the information was confidential.  However, he made no attempt to compile or verify the accuracy of information available to Pixcir from its accounting system on the specific topic of the deposition for which he was designated to testify as the corporation's designee.  Many of the exhibits that were shown to Mr. Gao that Pixcir produced in this case reflected inconsistent cost figures for the same Pixcir product.  Mr. Gao noted the discrepancies, but was unable

to explain them.

Mr. Gao testified that he only spoke with counsel for approximately ten to twenty minutes before the deposition to familiarize himself with the process. Mr. Gao attempted to speak with counsel on the phone before the deposition, but was not fluent in English and did not believe he understood much of the conversation. It is clear to the court that Mr. Gao was not a thoroughly educated witness about the noticed topic and the facts known to the corporation. A Rule 30(b)(6) deposition is not a memory contest or an opportunity to require a witness to do detailed mathematical calculations on the spot. A corporation and its counsel cannot be expected to anticipate every question or line of inquiry opposing counsel might ask in a Rule 30(b)(6) deposition. However, the line of questions asked by counsel for Elan concerning the specifics of the costs and revenues for Pixcir products involved in this case are questions a thoroughly educated Rule 30(b)(6) deponent should have been prepared to answer. Mr. Gao was not only unable to answer the majority of questions directly related to topic 6, but disavowed knowledge of the contents of documents the corporation produced in discovery on the topic, and whether the information was accurate.

Pixcir's offer to stipulate to the authenticity of documents produced in discovery to verify its costs of sales, revenues, and profits, does not relieve it of its obligation to produce a fully-educated Rule 30(b)(6) deponent. Indeed, the purpose of a deposition is to allow opposing counsel to obtain more complete information and to probe the facial validity of information produced in documents and by other discovery techniques. Elan was entitled to question a fully-educated Rule 30(b)(6) designee of the corporation concerning such issues as the manner in which the documents were produced, the method used to compile the data, the underlying data relied upon, the accuracy of the information, and whether the accuracy of the information was verified, and if so, by whom. This is information that was clearly reasonably available to the corporation. Under these circumstances, the court concludes that evidentiary sanctions are warranted.

**IT IS ORDERED** that Elan's Emergency Motion to Compel Deposition Testimony (Dkt. #196) is **GRANTED in part** and **DENIED in part**.

1) The motion is **GRANTED** to the extent that Pixcir shall be precluded at trial or in motion practice from offering any evidence concerning its costs that would be deducted

from its revenue to reduce the profits it has made from any alleged infringing sales.

2) The motion is **DENIED** in all other respects.

Dated this 7th day of August, 2013.

_____
Peggy A. Leen
United States Magistrate Judge

13