**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ELAN MICROELECTRONICS CORPORATION,
Plaintiff,
vs.
PIXCIR MICROELECTRONICS CO. LTD.,
Defendant.

Case No. 2:10-cv-00014-GMN-PAL

**ORDER**

(Mot Compel Prod. Communication - Dkt. #193)

Before the court is Elan Microelectronics Corporation's Motion to Compel Production of Communications and Work Product Improperly Withheld on the Basis of Privilege (Dkt. #193) filed under seal. The court has considered the Motion, the Declaration of Sean P. DeBruine in Support (Dkt. #194), Supporting Exhibits (Dkt. #195), Pixcir's Response (Dkt. #207), Elan's Reply (Dkt. #214), and the Supplemental Declaration of Sean P. DeBruine (Dkt. #216). The moving and responsive papers were filed under seal because they contain information designated as "confidential" or "confidential-attorney's eyes only" pursuant to the court's stipulated protective order.

**BACKGROUND**

This is a patent infringement action brought by the Plaintiff Elan who is the sole owner of United States Patent No. 5,825,352 ("`352 Patent") entitled "Multiple Finger Contact Sensing Method for Emulating Mouse Buttons and Mouse Operations on a Touch Sensor Pad." Am. Complaint, ¶5 (Dkt. #8). Plaintiff is a Taiwanese corporation. *Id.*, ¶4. It conducts research and development for "products that enable Smart Human-Machine Interface solutions." *Id.*, ¶7. Plaintiff develops "capacitive touch pads and transparent touch screens" capable of recognizing "touch pad gestures involving multiple simultaneous finger touches for input devices." *Id.* Plaintiff's Capacitive Touch Pad Multi-Finger Solution is one embodiment of the `352 Patent. *Id.*, ¶8.

Defendant Pixcir designs, markets, and sells integrated circuit products. *Id.*, ¶9. Plaintiff alleges that Pixcir has infringed the `352 Patent by using, selling, offering for sale, and marketing touch pad and touch screen products that have the ability to recognize multi-finger gestures. *Id.*, ¶11.

Elan claims that at the deposition of Pixcir's CEO, Jin-Wei Hung, and its COO, Vincent Fuentes, both testified that Pixcir routinely disclosed to third parties the legal opinions of its trial counsel regarding non-infringement of the '352 Patent involved in this case. The disclosures were made in Pixcir's sales discussions and were oral and in PowerPoint presentations. PowerPoint slides were generated with input from Pixcir's U.S. Attorneys and reflect their legal opinions. Elan claims that Pixcir voluntarily disclosed their contents to any existing or potential customers who asked about the `352 patent. Pixcir provided two copies of those presentations to Elan. Pixcir also permitted Mr. Fuentes to answer questions in detail about the creation, content, disclosure and meaning of the PowerPoint presentations. Thus, any attorney-client privilege or work-product protection that may have applied on the subject of non-infringement was waived. Elan also argues that any applicable privilege was waived by Pixcir's repeated and voluntary disclosure of the presentations to third parties.

Pixcir has claimed that these presentations to third parties were confidential, and that a joint defense privilege applies. However, Pixcir has failed to produce any written joint defense or common interest agreements with those third parties. Additionally, Elan argues that Pixcir's purpose in giving the presentations was to sell products, not to further a common legal interest. Therefore, the common interest doctrine does not apply and Pixcir should be compelled to produce all communications and work product regarding the issue of non-infringement of the `352 Patent. Elan also asks for an award of attorney's fees and costs for the necessity of filing this motion.

Elan argues that Pixcir waived attorney-client and work product privilege with respect to all legal opinions given to Pixcir by its U.S. Attorneys that Pixcir did not infringe the '352 Patent. Pixcir should be compelled to produce all communications and work product regarding the issue of non-infringement of the `352 Patent which Pixcir has withheld from discovery on the basis of privilege. As Pixcir has disclosed presentations which were created with the input of Pixcir's U.S. counsel containing legal analysis and opinions on the issue of non-infringement, it would be unfair to allow Pixcir to selectively withhold communications and work product on this legal issue.

Pixcir opposes the motion acknowledging that during the deposition of Vincent Fuentes, he referred to a PowerPoint presentation that was listed on Pixcir's privilege log. The PowerPoint presentation concerned the non-infringement of the patent at issue. Pixcir initially maintained that the information was "disclosed in a confidential manner to Pixcir's customers." Pixcir does not now claim that the PowerPoint presentation is attorney work product. Mr. Fuentes testified that parts of the presentation were influenced by input from litigation counsel. While Pixcir acknowledges that the PowerPoint presentation may have been influenced by confidential communications between Pixcir and its attorneys, it argues that the presentations do not actually contain or disclose confidential communications. Therefore, there has been no waiver of the attorney-client privilege concerning confidential attorney-client communications. Additionally, even if a waiver of the attorney-client privilege occurred, Pixcir maintains that the waiver extends only to the content of disclosed communications, and a broad waiver of other attorney-client privileged information has not occurred. Fairness does not dictate a broader waiver because Pixcir is not relying on the contents of its communications with its counsel to support a claim or defense in this action.

Pixcir maintains that the PowerPoint presentation was shown but never left with customers and contained indications that it was "Pixcir Confidential." Mr. Fuentes testified at his deposition in London that a PowerPoint presentation relating to the `352 Patent had been presented to Pixcir's customers. These presentations were included in Pixcir's privilege log. The Pixcir attorney who was defending the deposition understood it would be difficult to re-convene the deposition after obtaining a ruling on privilege, and offered to "temporarily disclose" copies of the PowerPoint presentation to opposing counsel and allow opposing counsel to ask questions concerning the presentations. Pixcir maintains that the parties understood that the parties "would settle the privilege issue, if necessary, after the deposition."

Pixcir contends that the PowerPoint presentations were kept on Mr. Fuentes' laptop and physical copies were not printed except to produce them in this case. The presentations, which were filed under seal as Exhibits "A" and "B" (Dkt. #195) do not actually disclose confidential communications between Pixcir and its litigation counsel. Pixcir disputes that Mr. Fuentes testified at his deposition that the presentations contain confidential communications between Pixcir and its

litigation counsel. Pixcir maintains that Mr. Fuentes and Lionel Portman performed their own analysis of the `352 Patent and created the PowerPoint presentations from this analysis. The presentations did not contain the work product of litigation counsel, Nixon Peabody, because the initial presentation was dated January 7, 2010, before the firm was retained. Mr. Fuentes testified at his deposition that there had been communications between Pixcir and it's litigation counsel, and that a few of the slides in the PowerPoint presentation reflected some kind of input from litigation counsel. Pixcir argues that input was confidential, and for the purpose of providing legal advice relating to the presentations. However, the presentations themselves do not reveal the contents of any confidential communications between Pixcir and its litigation counsel "any more than Elan's Complaint reveals the confidential communications between Elan and its litigation counsel."

Pixcir argues that even if a waiver of the attorney-client privilege occurred as a result of the disclosure of the PowerPoint presentation and Mr. Fuentes' testimony, the scope of the waiver extends only to communications about the matter actually disclosed. Pixcir relies on the Ninth Circuit's decision in *Chevron Corp. v. Penzoil Co.,* 974 F.2d 1156, 1162 (9th Cir. 1992) to support its arguments that the disclosures made here did not result in a blanket waiver of all documents on the subject matter of non-infringement of the `352 Patent. Fairness does not dictate otherwise because Pixcir is not relying on the confidential communications between itself and its litigation counsel to support any claim or defense.

Elan replies that Pixcir and its counsel have consistently stated that the PowerPoint presentations reflected attorneys' opinions and work product, but take a contrary position in their response. Pixcir did not initially produce the documents, but withheld them under a claim of attorney-client and work product privilege. The documents were described on the privilege log as having been "prepared under supervision of Nixon Peabody, containing confidential legal advice and trial preparation material." Pixcir then gave Elan the PowerPoint presentations and subsequently asserted privilege and instructed Pixcir witnesses not to answer questions about the opinions disclosed in the PowerPoint presentations.

Elan points out that Pixcir initially claimed that these documents were covered under the "common interest" exception to the waiver rule. However, in its opposition to this motion, Pixcir has

abandoned that theory. Having relied on its claim of privilege and work product protection to withhold the documents from discovery, Pixcir should not be permitted to reverse course. Additionally, counsel for Pixcir should not be permitted to offer testimony contradicting the testimony of their clients. Elan maintains that the presentations were prepared in response to this lawsuit, after consultation with Pixcir's counsel, and include detailed legal analysis of the patent infringement allegations. The face of the materials reflect attorney work product which "was quite clearly the result of communications between counsel and Pixcir that allegedly resulted in the legal advice that has been shared with all of Pixcir's customers and potential customers." Under these circumstances, there is no real question that Pixcir knowingly waived any claim of privilege or work product protection on the subject of Pixcir's infringement of the `352 Patent.

## DISCUSSION

### I. The Attorney-Client Privilege.

The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice and an attorney's advice in response to such disclosures. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (quotation omitted), *cert. denied*, 520 U.S. 1167 (1997). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co., v. United States,* 449 U.S. 383, 389 (1981). It serves to protect confidential communications between a party and its attorney in order to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The privilege applies where legal advice of any kind is sought from a professional legal advisor in her capacity as such, and the communication relates to that purpose, and is made in confidence by or for the client. *Id.* The Ninth Circuit has adopted Dean Wigmore's articulation of the elements of the attorney-client privilege: (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, and (8) unless the protection is waived. *In re: Fischel,* 557 F.2d 209, 211 (9th Cir.1977); *Admiral Insurance Co. v. U.S. Dist. Ct.,* 881 F.2d 1486, 1492 (9th Cir.1989).

"The burden is on the party asserting the privilege to establish all the elements of the privilege." *United States v. Martin,* 378 F.3d 988, 999–1000 (9th Cir.2002). The party asserting the attorney-client privilege must establish the attorney-client relationship and the privileged nature of the communication. *United States v. Bauer,* 132 F.3d 504, 507 (9th Cir.1997). A party claiming the attorney-client privilege "must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *Martin,* 278 F.3d at 1000. Blanket assertions of attorney-client privilege are "extremely disfavored." *Id.* Additionally, "the communication must be between the client and lawyer for the purpose of obtaining legal advice." *Id.* "The fact that a person is a lawyer does not make all communications with that person privileged." *Id.* at 999. The party asserting the privilege must, at a minimum, make a prima facie showing that the privilege protects the information the party intends to withhold. *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir.1992).

Not all communications between an attorney and client are privileged. Information such as the identity of the client, the amount of the fee, the identification of payment by case file name, the general purpose of the work performed, and whether an attorney coached a client in his testimony is not privileged. *See, e.g., United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir. 1994); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Similarly, when an attorney is merely communicating information, such as an order to appear in court, the communications between the attorney and the client are not privileged. *United States v. Gray*, 876 F.2d 1411 (9th Cir. 1989) (holding attorney-client privilege did not preclude lawyer from testifying he advised client of the sentencing date in prosecution of client for failure to appear); *McKay v. Commissioner*, 886 F.2d 1237 (9th Cir. 1989) (holding testimony of taxpayer's attorney that the gave taxpayer a copy of deficiency notice from the IRS in ample time to file a petition timely did not violate the attorney-client privilege).

The attorney-client privilege is a rule of evidence; it has not been held a constitutional right. *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1980). The party asserting the attorney-client privilege has the burden of proving the attorney-client privilege applies. *Id*. at 25. "One of the elements that the asserting party must prove is that it has not waived the privilege." *Id*. The attorney-

client privilege is waived when communications are made in the presence of third parties. *United States v. Gann*, 732 F.2d 714, 723 (9th Cir.), *cert. denied*, 469 U.S. 1034 (1984). It is well established that "voluntary disclosure of the content of a privileged attorney communication constitutes a waiver of the privilege as to all other such communications on the same subject." *Id*. In *Weil*, the Ninth Circuit recognized that waiver of the privilege "may be effected by implication" and by inadvertent disclosure. *Id*. Additionally, "the subjective intent of the party asserting the privilege is only one factor to be considered in determining whether waiver should be implied." *Id*.

Courts narrowly construe the privilege and recognize it "only to the limited extent that ... excluding relevant evidence has a public good transcending the normal predominate principal of utilizing all rational means for ascertaining the truth." *Trammel v. United States,* 445 U.S. 40, 50 (1980); *Weil v. Inv./Indicators Research & Mgmt., Inc.,* 647 F.2d 18, 24 (9th Cir.1981) ( "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed"). Similarly, because the attorney-client privilege is in derogation of the truth-finding process and must be strictly construed, "the privilege should attach only where extending its protection would foster more forthright and complete communication between the attorney and her client *about the client's legal dilemma.*" *United States v. ChevronTexaco Corp.,* 241 F.Supp.2d 1065, 1070 (N.D.Cal.2002) (emphasis in original).

Generally, the voluntary disclosure of privileged attorney-client communications constitutes a waiver of the privilege as to all other such communications dealing with the same subject matter. *United States v. Zolin,* 809 F.2d 1411, 1415 (9th Cir.1987), *rev'd in part on other grounds by* 491 U.S. 554 (1989). "In order to establish the applicability of the attorney-client privilege to a given communication, the party asserting the privilege must affirmatively demonstrate non-waiver." *Id.* Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege. *Id.* The Ninth Circuit employs a three-prong test to determine whether a waiver of the attorney-client privilege has occurred. *United States v. Amlani,* 169 F.3d 1189, 1195 (9th Cir. 1999). First, the court considers whether a party is asserting the attorney-client privilege as a result of some affirmative act. *Id*. Second, the court examines whether the party asserting the privilege through

/ / /

an affirmative act has put the privileged information at issue. *Id*. Third, the court evaluates whether allowing the privilege would deny the opposing party access to information vital to its case. *Id*.

There are many contexts in which the courts have held that a party waives the attorney-client privilege by affirmatively relying on the advice of counsel to support a claim or defense. *See, e.g., Trans World Airlines, Inc. v. Hughes,* 332 F.2d 602, 615 (2nd Cir.1964), *cert. denied,* 380 U.S. 248, 85 S.Ct. 934, 13 L.Ed.2d 817 (1965) (attorney client privilege waived where the advice of counsel defense raised in an antitrust case and attorney had submitted an affidavit to the Civil Aeronautics Board); *Livingstone v. North Belle Vernon Boro.,* 91 F.3d 515, 537 (3rd Cir.1996) (civil rights plaintiff who asserted she relied on advice of counsel in waiving the right to sue put advice of counsel in issue and waived privilege); *United States v. Amlani,* 169 F.3d 1189, 1195-96 (9th Cir.1999) (client asserting he discharged attorney for certain reasons cannot invoke the attorney-client privilege to deny government counsel access to the information needed to refute claim); *Tsai-Son Nguyen v. Excel Corp.,* 197 F.3d 200 (5th Cir.1999) (executive deponents claiming during deposition that they relied on advice of counsel to substantiate good faith defense to violation of federal law waived attorney-client privilege, and opposing counsel could depose the attorneys on whose advice deponents testified they relied); *Johnson v. Rauland-Borg Corp.,* 961 F.Supp. 208, 211 (N.D. Ill. 1997) (employer who asserted it acted reasonably by employing outside attorney to investigate Title VII claim waived privilege).

**II. The Work Product Doctrine.**

The work-product doctrine is aimed to protect the effectiveness of a lawyer's trial preparation by immunizing his or her materials from discovery. *Handgards, Inc. v. Johnson & Johnson,* 413 F. Supp. 926, 930 (N.D. Cal. 1976) (citing *Kirkland v. Morton Salt Co.,* 46 F.R.D. 28 (N.D.Ga.1968)); *Developments in the Law-Discovery,* 74 Harv. L.Rev. 940, 1045 (1961). The court has a duty to balance plaintiffs' need to conduct discovery with the right of the defendant, and its counsel, to retain the benefits of the lawyers' work for the client free from intrusion by opposing parties and their counsel. The same rationale applies to the waiver of work-product immunity. As the court held in *Handgards,* 413 F.Supp. at 931-33, although attorneys' work-product is ordinarily protected, once a client decides to call the attorneys as witnesses, the work-product protection must give way to full disclosure on any issue to which they will testify. Anything less would permit manipulation of the truth.

**III. Application and Analysis.**

Discovery in this case has been contentious and the court has considered and resolved many, many of the parties' discovery disputes. The moving and responsive papers for this motion consist of in excess of 800 pages, the majority of which are voluminous, multi-day deposition transcripts. The court lacks the time and resources to systematically review hundreds and hundreds of pages of supporting documents which are not highlighted by counsel in their moving and responsive papers to decide the outcome of this motion to compel. Elan has plainly not complied with its meet-and-confer obligations. The motion contains a one-line "certification" that the parties have been unable to resolve this matter without court action. However, Elan has fallen far short of complying with the requirements of LR 26(c) and the meet-and-confer obligations outlined in *Nevada Power v. Monsanto*, 151 F.R.D. 118 (D. Nev. 1993) and *Shufflemaster v. Progressive Games*, 170 F.R.D. 166 (D. Nev. 1996). The motion could be denied on this grounds alone. However, because it is clear from a review of the voluminous moving and responsive papers that Pixcir wrongfully designated the two PowerPoint presentations in dispute in this motion as attorney-client and work-product protected documents, the court will address the merits of the motion.

The court has reviewed the two PowerPoint presentations initially withheld from production and produced between day one and day two of Mr. Fuentes' deposition. It is undisputed that these two PowerPoint presentations were shown to multiple clients and potential clients of Pixcir. Both documents were listed on Pixcir's second privileged document log. The privileged document log provided the date of each of the documents, and reflected that Vincent Fuentes was the author. Recipients of the documents were referred to as "internal". Pixcir claimed that these two documents were protected by the attorney-client and work-product privilege. Specifically, under the column entitled Basis of Privilege(s) counsel for Pixcir claimed that both documents consisted of "confidential presentation, prepared under supervision of Nixon Peabody, containing confidential legal advice and trial preparation materials." Having reviewed the two PowerPoint presentations, the court finds the documents are not and never were privileged. Counsel for Pixcir is admonished and will be sanctioned for listing them on a privileged document log, withholding them from production in this case, and taking inconsistent legal positions with respect to whether the documents are or are not privileged.

The first PowerPoint presentation consists of a series of slides entitled “Elan v. Pixcir IP Claim”. The first document is dated January 7, 2010. It consists of a series of slides describing what the `352 patent is, including portions of the patent itself. The second portion of the PowerPoint presentation contains a summary of “the claim” followed by slides reprinting portions of the complaint that was filed in this case. There are words and phrases above cut-and-paste portions of the complaint such as “jurisdiction–no available data”; “claim is based on `352 only”; “no documents to proof [sic] available”. One slide is entitled “evidence”. It consists of two comments: (1) to date the claim as filed shows no evidence of infringement; and (2) many arguments in the claim are wrong. Another slide describes the “claims status” as of the end of May 2010. It reflects the claim was filed January 7, 2010, and “expired on May 7, 2010, without Pixcir being notified”. It also indicates that an amended claim was filed May 5, 2010. The second PowerPoint presentation is dated December 2011, and entitled “Elan v. Pixcir IP Claim”. It contains the same type of information contained in the earlier version and additional comments such as “claim analysis shows that Elan does not know how Tango S 32 works,” and “literally, there is NO infringement”. The second PowerPoint slide presentation also contains comments about the case filed by Elantech Devices Corp. v. Synaptics over the `352 Patent with excerpts from a memorandum and order on summary judgment in that case and comments about the court’s conclusion and decision. Finally, the second PowerPoint presentation contains slides describing the case Elan filed against Apple for the infringement of the `352 Patent in 2010, with a comment that “the proceedings of this case is very helpful to our case.” Portions of the claim construction order are cut and paste and included on the slide.

It is undisputed that Pixcir listed these two PowerPoint presentations on its privileged document log and described them as having been “prepared under supervision of Nixon Peabody, containing confidential legal advice and trial preparation material.” It is undisputed that these PowerPoint presentations were presented to multiple existing and potential clients of Pixcir who asked about the pending Elan litigation. The recipients of the content of the presentations were clearly not all “internal” as claimed on the privileged document log. It is undisputed that counsel for Pixcir made an abrupt about-face during the deposition of Mr. Fuentes about whether these two PowerPoint presentations were actually privileged, and produced the two PowerPoint presentations between the first and second

day of Mr. Fuentes' deposition. Pixcir's opposition to this motion fails to candidly acknowledge its change in position and attempts to dance around and ignore the inconsistent positions it has taken. Pixcir does not dispute that it also took the position the presentations were protected under the common interest privilege. For these violations of its duty of candor to the court and opposing counsel and for wasting the time and resources of this court to sort out this dispute Pixcir will be sanctioned.

However, on the merits, the court finds that the generic references to three different lawsuits and the opinions expressed by Mr. Fuentes, the author of the PowerPoint presentations, has not waived the attorney-client privilege with respect to all communications on the infringement opinions of its counsel. The presentations clearly reflect the lay understanding of Mr. Fuentes that Pixcir's products do not infringe the `352 Patent. The generic references to three different lawsuits, and publically filed documents and Mr. Fuentes' testimony that he received input from Pixcir's litigation counsel to the effect Pixcir's products do not infringe Elan's patent, do not alter the court's conclusion. The slide presentations simply do not relate the content of confidential attorney-client communications on legal analysis or advice rendered on whether or not the `352 Patent has been infringed. They are akin to general denials of liability typically made in press releases.

The documents are not privileged and should have been produced by Pixcir in discovery. These materials were provided to non-party customers and potential customers. The slide presentations convey a lay person's understanding of the general nature of the claims made by Elan and Pixcir's position that its products do not infringe Elan's `352 Patent. They do not, by any stretch, convey confidential legal opinions or analysis that give rise to a waiver of the attorney-client privilege on the entire subject matter of non-infringement.

The court finds that Pixcir wrongfully withheld the two PowerPoint presentations from disclosure in discovery, and wrongfully listed them as attorney-client and work-product protected documents. The court also finds that Pixcir's inconsistent legal positions has needlessly multiplied these proceedings and created unnecessary work for this court. Counsel for Pixcir is admonished for improperly withholding the documents and improperly claiming privilege and then changing its position in opposition to the motion. However, Elan overreaches by suggesting that the two PowerPoint presentations containing generic descriptions of the lawsuit, the patent and Pixcir's general

defense on non-infringement somehow disclose confidential attorney-client privileged information constituting a waiver of the privilege on the entire subject matter of non-infringement of the `352 Patent. Pixcir is sanctioned the sum of $3,000.00 payable to the registry of this court for its wrongful conduct. Elan's request for monetary sanctions for the "necessity" of filing this motion is denied as Elan did not comply with its meet-and-confer obligations and grossly overreached by requesting the relief requested in this motion. Accordingly,

**IT IS ORDERED** that:

1. Elan's Motion to Compel is **GRANTED** to the limited extent that the court finds the two PowerPoint presentations ultimately disclosed in discovery were improperly withheld and designated as privileged.

2. Pixcir is sanctioned the sum of $3,000.00 for needlessly multiplying these proceedings and wasting the resources of the court. Pixcir shall pay the $3,000.00 in monetary sanctions to the registry of the court no later than thirty days from entry of this order.

3. The motion is **DENIED** in all other respects.

Dated this 13th day of August, 2013.

Peggy A. Leen
United States Magistrate Judge